May it please the court, my name is Deloni Watson and I am representing the appellant Mr. Edward Eugene Robinson and unless the court has questions I will be limiting my argument to the second issue in the appellant's brief, whether Mr. Robinson's section 924 C conviction should be vacated and the appellant would rest on the remainder of his brief for the other issues. Now Mr. Robinson was convicted of in count 1 a conspiracy to commit a Hobbs Act robbery, in count 2 a Hobbs Act robbery where both a completed and an attempted Hobbs Act robbery were alleged, and in count 3 a 924 relying on count 2 the 1925 and so forth with count 5 relying on count 4 which was the additional Hobbs Act robbery. Now as the court is aware a violation of section 924 requires that the government allege and prove a predicate offense, either a crime of violence or a drug trafficking offense. In this case the problem arose because in the 1951 offense the government alleged both a completed robbery and an attempted robbery. Now we have a plain error standard here because there was no objection below and the government concedes that there was error and that it was plain and obvious, but argues that the evidence only shows that a completed robbery, and so their completed robberies were done and so therefore there was no jury confusion. But we think that there was jury confusion for several reasons. The first is instead of the 924 C containing discrete offenses, crimes of violence offenses, the completed and the attempted, the language is actually in the 1951 offense itself. So this isn't an instance where the jury was looking at two separate offenses and deciding which was which. Instead the predicate offense contained both. And obviously it was duplicitous, but that issue wasn't raised pre-trial, but it was duplicitous. And there's clearly a reason that the government elected, because in the original indictment... But this argument, which I agree that's a distinction, that would distinguish Jones, wouldn't it, McLaren, and Hankton? Yes. Okay, but I thought you were saying that this court has recognized that there are issues when there are... Two different predicates. Exactly, two different predicates. One of them is valid, one is invalid. Exactly, but in this instance... We have an unusual circumstance here where they were charged, yes. Yes, sir, where the very predicate offense itself has the issues of both. Okay, go ahead. Okay. So... And so the other problem with this case is that these are not discrete offenses, such that, like say for instance, if you looked at the Montemayor case, those were discrete offenses where you had carjacking and a drug trafficking offense. So no jury would have been confused about the evidence that showed carjacking versus a drug trafficking offense. Here though, the evidence was not discrete because the offenses weren't discrete. When there's a jury's instruction slash unanimity problem that comes up because of a subsequent Supreme Court law, but it's on direct review, so there we are. I thought we tended to look... We tended to look especially at closing arguments. Yes, sir. And there was no discussion in the closing arguments that... No one brought up attempt at all. No one brought up attempt. So that's a bit of a hurdle for you, right? Well, it would be except for the jury instructions also don't have any definition for what an attempted robbery is. And so I believe that the jury could have been confused as to what is a robbery versus an attempted robbery. This isn't dispositive. I just truly don't remember, were there any jury questions reflecting... Yes, there was in fact a jury question. As for... There was a jury question that asked, in counts two and four, the first element speaks to personal property from a person or in her presence. Two questions related to this. Number one, is this limited to the employee as an individual or can it also apply to the larger company she works for? And then question number two, does the standard also apply to personal property? And the court of course gave the standard response, you know, refer back to the instructions. But the problem is a jury could then have decided, oh, well, that's what they meant by attempted because there was no jury instruction that helped them to understand what the difference was between a completed Hobbs Act robbery and attempted one. So the jury... And this is further indicated because, like, say for instance that the evidence for count four, which was the Hobbs Act robbery in which the victim actually was able to run away, the robbers had put the phones in a bag. They wanted to tie her up. She didn't want to be tied up. And so she was able to run away. When she got out of the building, one of the defendants followed her and hit her with a gun. The gun fell out of his hand, rolled away. He's trying to get it and she's able to actually escape altogether. This raises a question for the jury. All right, did they take the property from her? Did they take it from the organization? What does that mean? But by referring the jury back to the instructions, which the court should perfectly was correct in doing so, that raises the question of, well, did the jury believe that this is what was meant by an attempted robbery as opposed to a robbery? And because the jury instructions don't tell the jury what an attempted robbery is, that leaves them in limbo. Further, the instructions actually told the jury that a separate crime is charged in each count of the indictment. And so for them looking at a completed Hobbs Act and attempted Hobbs Act within each of these 1951 offenses, there was overwhelming possibility of jury confusion as to what actually they were supposed to be deciding. They were never told to decide between attempted or robbery. There's nothing in the jury instructions to help them to understand that there is a difference between the two. And for those reasons, the appellant believes that the jury was confused. And this jury instruction showed that there was some confusion about at least who the property had to be taken from. And by making it an attempted robbery, a jury could have found Mr. Robinson guilty, especially with respect to this count, simply based upon what the jury contemplated what an attempted robbery was. And that's the problem. Your argument to us is this record, this case, shows plain error. Yes. Because the trial proof here might have left open the possibility one of these two Hobbs Act robberies didn't happen? Or are you saying that in every single case where the predicate is the same as the charge, we would necessarily, all courts would always have to find legally that there's plain error? The second one. Because of the jury argument, because of the jury argument, you're not saying in this case there was, someone was arguing it was attempted, not completed. You're just saying whenever the predicate is the same as the charge defense. You see my difference? Yes, sir. Okay. And I would have thought that fourth prong of plain error view would always be fact-specific as to what actually did even the defense say. Did the defense ever say they... No, Your Honor. There was no discussion at all in the jury about attempted. And so... By the lawyers, opening, closing, evidence at trial. No, sir. Nothing. Admittedly, it was always a discussion about completed robbery. But the problem is, what did the jury believe that meant? Because without a jury instruction that goes to attempt, there's no way to know what the jury believed that they were finding. And like I said, because the evidence, because these are not discrete offenses, this isn't a carjacking or drug trafficking offense. The evidence would have been the same for both. But there was more than that one count. I'm sorry, Your Honor? There was more than that one count, right? Of the instance where the woman actually escaped. Yes, ma'am. There were several more. There was one other one. Because there were actually two 1951 Hobbs Act robbery counts. And then there was a 924 linked to each one of them. So what about, how does that affect when they have two counts and there's no way anybody could have thought that was not a completed robbery, right? On the second count, on the other count? There was nothing that I can point to that would show that that was not a completed robbery. But I still go back to the fact that the predicate offenses are not discrete offenses. And that the jury would say that this is just one crime. It's attempted and it's robbery. And so there's no way the jury could differentiate between what they were looking at, whether it was attempted or whether it was a completed robbery given the jury instructions. Now, as I said, there was no argument going either way. It's hard for me to understand how the jury could have found anything other than attempted robbery given the facts of, even the one that you say there was confusion about. Well, even in Montemayor, this court in saying that there was no double jeopardy violation didn't attempt to distinguish between an attempted carjacking and a completed carjacking. And it was dicta, but as a matter of fact, the court specifically said the evidence was undisputed. And based on this record, we can find the defendants guilty of brandishing a firearm, doing an actual and attempted carjacking. So even in that case, the court recognized that there was undisputed evidence but didn't try to separate out a completed carjacking versus an attempted carjacking because the problem is the evidence to establish both is the same. So you have a jury that's presented with the same evidence, no way to distinguish what it is they're supposed to be figuring out because there's nothing in the jury instructions that help them to understand what it is they're supposed to be deciphering. Are they supposed to be determining whether or not there was a completed ops act robbery or one that wasn't completed? Before your time's up, because the brief did devote quite a bit of time to the Speedy Trial Act issue, I just have one factual clarification. Does the record reflect that Robinson ever on the record disagreed with the, it was the FPD at the very beginning, right? Yes. Is there anything in the record? There wasn't anything specific going to Speedy Trial, but he was... I know he clashed with her. Yeah. She caught her off. But there was nothing... No, there was no specific language. The act does say it can be done by counsel. Yes, it does. If there are no other questions. Thank you. Thank you. May it please the court. Stephen Gilstrap on behalf of the United States. I'll start with the Taylor question, which seems to be the focus here today, and go on to any questions the court may have as to the Speedy Trial Act issue or the sentencing issues. As Robinson's counsel pointed out, after the Supreme Court decided United States versus Taylor, by including attempt in the Substantive Hobbs Act count, the government agrees that there was an error here. But there is no effect on Mr. Robinson's substantial rights. And that's given, that's because everything at trial, from opening statements to the evidence to closing statements, proved beyond any doubt that counts two and four, the Substantive Hobbs Act counts, were completed robberies. There can be no question about that based on what the jury heard. And based on the analysis that this court undertakes in Jones and Montemayor and these type of cases where there's an argument that there's jury confusion here, let's look at what the record shows. I think she's conceded the record. She just varied frontally. So it's purely a critique. Whenever the predicates are attempts to the completed crime, a jury necessarily had it in their head that they could just decide on attempt. Is there a circuit law that is informative on that? I don't fully appreciate the distinction that's trying to be drawn there because at the end of the day you're left with the same situation in Jones and Montemayor where you have arguably an invalid predicate and a valid predicate. And the jury rely on in finding convictions on that. And you can look at that. I see what she's saying now, I think, which is normally you can look and, well, there was no argument at all about this separate offense. But I think what she's saying is here you had to go through attempt to get to completion. A couple points on that, Your Honor. The case that comes to mind as being closest to this fact pattern that I'm aware of is the Fourth Circuit case in Stewart, which is cited in the government's brief, where there was a conspiracy to commit Hobbs Act robbery and a completed Hobbs Act robbery. And, in fact, what the Fourth Circuit said in that case is the fact that the nucleus of facts is the same. Reduces. Reduces the likelihood that there was confusion here because where the evidence shows that the robbery got all the way to the end, that it was successfully completed, that gives us comfort that there's no concern here. I'm not aware of any case law in the Fifth Circuit or otherwise that creates this sort of per se rule that whenever an attempt is charged in the conjunctive, that they're necessarily. That was the pattern instruction, I assume. That pattern instruction, yes. And at that time, the jury trial took place in March of 2021. At that point in time, binding Fifth Circuit law held that attempted Hobbs Act robbery, just like a completed Hobbs Act robbery, was a crime of violence. So there wasn't really any reason to dig down farther at that point in time. The one thing that counsel mentioned this morning that was not in the briefing is this argument about a potential escape and the jury note and that sort of thing. So to the extent she's arguing that some evidence creates some confusion, I'd like to clear that up. The evidence as it relates to that count four, which is the count where during the robbery, the store clerk was able to get away and escape to a nearby store. The evidence shows that at the point she was able to run out the back door, the robbers had gotten her keys by force. They had opened the safe. There are pictures in the record where you can see the duffel bag that they put the cell phones in open underneath an open safe with her still in the room. So she was able to run out at some point in time, but there is no dispute in the record that cell phones were taken from that safe. As I said, the jury was able to see the video. They saw pictures. They heard the testimony where that exact store clerk, before she was able to leave, said and testified, and this is at ROA 750, that Robinson and Hardwick started taking phones out of the safe. She saw them taking phones out of the safe before she was able to escape. And the video and the photographs of the robberies confirmed that both of these And as you pointed out in your questioning, Judge Higginson, a lot of times the court will look closely at opening arguments and closing arguments and those sort of things to kind of see what was the theory at trial. Here, there was no theory about attempt from either side. In opening statements, the government said, and this is at ROA 695, I suspect there's not going to be a lot of debate or a lot of question in this trial about the fact that these robberies occurred. And right after that, defense counsel, in his opening statement, said, the robberies probably did occur based on what the prosecutor mentioned, but you're not going to be able to put my client at the scene. The whole theory of the defense here was identity. It had nothing to do with, oh, well, these robberies may not have been successful or these were attempts or anything related to that. And when the prosecutor in closing was talking about the charge itself, and this is at ROA 1055, the prosecutor said, if you find that those robberies in counts two and four occurred, you will have satisfied the first element of the 924Cs. So I don't think you can take a case where the evidence is undisputed that cell phones were successfully taken from a cell phone store during a robbery to say that the jury would somehow be confused that this was an attempt. The jury note, which, again, is not mentioned in Robinson's briefs, is a custody and control type issue. It actually doesn't have a question about the attempt or completed. It's saying, we agree that property was taken. What do we look at? Whose property are we asking about here? And the government in saying the court should just give it standard instruction that look back at the jury instructions, recognize that those custody and control issues were dealt with in the jury charge. Really quickly, just on the case law here, there is, as the briefing points out, there are a handful of cases that deal with this issue in the circuit. On one side, you have Jones, McLaren, and Hankton. Those cases are virtually identical in their fact pattern because they dealt with an invalid RICO conspiracy and a valid drug trafficking conspiracy. And in every case, the analysis seems to be that there are three things, as best I can tell, as to why that situation creates a problem. The first one being the conduct is not coextensive here. The RICO conspiracy, the invalid conspiracy, and this is the second point, is actually broader than the valid conspiracy because a RICO conspiracy could involve murders and other sorts of things that are not necessarily involved in the drug trafficking conspiracy. And the third thing, and this is critical, both theories are pursued at trial. Both the RICO conspiracy, which was invalid, and the drug trafficking conspiracy. And so that's why those three cases, which are virtually identical on this issue, are very different from this case. The nucleus of facts that make up counts two and four are the same here. And there is no question based on that nucleus of facts that a completed robbery occurred here. If anything, the valid predicate here, the completed robbery which was proven, is broader and subsumes the attempt because at some point that attempt turns into a completed robbery. And as I said, there's just no evidence that, nothing in the record to suggest that the attempt theory was pursued at trial. The government proved completed conspiracies and there was no dispute on that. And that's why this case is much more analogous to Montemayor from this court as well as the Second Circuit cases, the Fourth Circuit case in Stewart that's cited in the government's brief. And for those reasons, we do not believe that there is any plain error here because Mr. Robinson cannot establish that his substantial rights were affected. At the end of the day, if you took the attempt language out of counts two and four, based on this record, I don't believe there's any real dispute that the jury would have convicted because the robberies were still completed. If the court has questions about the Speedy Trial Act, the one thing I'd say on that is just every circuit to have directly considered this issue has relied on the language of the Speedy Trial Act which allows defense counsel to seek a continuance to say that you do not have to have a defendant's consent. Every court that I'm aware of to have considered this issue has disagreed with Mr. Robinson's argument there. And if the court has no further questions, then the government would respectfully ask that this court affirm the convictions in silence and full. Thank you, Your Honors. Thank you. Your Honors, in fact, the appellate does believe that there is a factual problem with count five. Given the language and also given the jury note from which the jury could have concluded that it was an attempted robbery based on the instruction that it was given and its concerns about who the property had to be taken from and the fact that the jury instruction said that only one offense is included in each count. So the appellate is not saying at all that for that particular count there is not factual problem because we believe that there is. Once again, we believe that there is plain error here and we believe that appellant's substantial rights were impacted by the fact that both attempted and a substantive offense were included in the predicate offense itself. And we ask that the defendant's, the appellant's convictions be vacated. I would like to say one other thing. This is probably going to be my last time appearing before this court. I can't believe it. I know. What are we going to do without you? What am I going to do without you? I've been appearing here since 1985 and so it's been my honor to be, to represent defendants and the government and I just want to thank you for your kindness over the years. Well, we know you're a court appointed and we very much appreciate the excellent job you've done in this case. Thank you very much. Thank you counsel. Thank you.